[No. 55278–9.   En Banc.   June 29, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. DESTIN LEMIER JACKSON, *Petitioner.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Susan J. Noonan, Deputy,* for respondent.

[Dissent amended by order of the Supreme Court July 28, 1989.]

CALLOW, C.J.—The defendant, Destin L. Jackson, was convicted of attempted second degree burglary. He contends the trial court erred in giving an inference of intent instruction.

The issues presented are:

1. In an attempted burglary case, is it error to instruct the jury that it may infer the defendant acted with intent to commit a crime within the building from the fact that the defendant may have attempted entrance into the building?

2. Is malicious mischief in the third degree a lesser included offense within attempted burglary in the second degree, where a substantial step taken in the furtherance of the burglary is the malicious destruction of property?

3. Does federal due process require the State to plead the nature of the crime a defendant intended to commit inside

the building he tried to enter? *See* and compare *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985), overruling *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983).

We hold the trial court cannot instruct the jury, where the charge is attempted burglary, that it may infer the defendant acted with intent to commit a crime within a building, where the evidence is that the defendant may have attempted entrance into a building, but there exist other equally reasonable conclusions which follow from the circumstances.

On the evening of February 2, 1986, a Seattle police officer received a dispatch call to proceed to Neal's Tailoring and Beverage Shop. As the officer was coming around a corner he saw the defendant kicking the front door of the shop. The defendant was taking short running kicks at the door and bouncing off. The kicks were aimed at the window area of the door. Once the defendant spotted the officer, he proceeded to briskly walk away. The officer placed the defendant under arrest. The officer testified that no one else was in the vicinity and that the defendant was constantly in his sight. When the door was examined it was found that about 10 inches of Plexiglas had been pushed inward and part of the wood stock around the Plexiglas was broken out of its frame. Footprints existed on the Plexiglas and they appeared to match the shoes of the defendant. The Plexiglas was not taken into custody, even though the right edge had been pushed inward, as it still prevented entry into the business. The molding which holds the glass in the door was broken on the inside, and there was wood on the floor. The pressure from the outside tore the molding off on the inside.

The defendant was charged with attempted second degree burglary. At trial, the defendant denied kicking the door. He claimed he noticed the broken door as he was walking by the shop and was arrested as he continued on his way.

At the conclusion of the State's case, the defendant moved for a dismissal asserting:

This may get to attempting malicious mischief, but to stack inferences of intent as to what was intended in terms of kicking or knocking out the door, then another inference if he intended to break in, he intended to commit a crime is beyond the limits of reasonable inferences. One inference is not enough. There is evidence to support one inference that he intended to break in, but you are asking, or the State would be asking, your honor, for the jury to do is to stack inferences. First of all, you have to infer he intended to break in based on his conduct. If you believe that once—that he did it, then that he intended to commit a crime. Stacking inferences is something that is beyond a prima facie case. Therefore, the case should proceed only on attempted criminal trespass or malicious mischief.

The trial court denied the motion. At the conclusion of the trial, the court heard exceptions to the proposed instructions to the jury.

[Defense Counsel] The defense would except to your Honor's failure to give the lesser included. The defense would suggest that the attempt statute is so broad. When you get down to what is alleged, namely, Destin Jackson broke the door in an attempt to get in that, indeed, legally and factually you would have to commit malicious mischief, or attempted burglary, which in a manner which has been charged in this case. For that reason, I would except to your Honor's failure to give that lesser included instruction.

. . .

[Defense Counsel] In addition, the defense would except to your Honor's giving the inference Instruction No. 10. Factually, the cases do not support that inference. The instruction reads, "A person who remains unlawfully in a building with intent to commit a crime." However, the record does not support the allegation Mr. Jackson—even if you assume it was Mr. Jackson who entered or remained unlawfully, he is charged with attempting to do so. Again, in the motion to dismiss at the end of the State's case, you are asking the jury first to infer what his intent is, then asking them to infer what

his intent was assuming the inference, that is inappropriate. It is clear on the face of the instruction it doesn't apply here because no injury was—or entry was actually made. That is the reason this instruction is inappropriate and the defense would except to it being given.

. . .

[Defense Counsel] Your Honor, in terms of our record, then having changed that, the defense would still suggest it is inappropriate because it stacks inferences. It requires the jury to make one conclusion, then, based on that conclusion, suggests they make another inference. It is a permissive inference as outlined here, but it is a comment on the evidence, if you find this then you can find that, then move on from there. The defense believes it is stacking inferences and would rely on that as previously explained.

Over the defendant's objection the court gave the following jury instruction:

A person who *attempts to* enter or remain unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

(Italics ours.) WPIC 60.05 does not include the italicized words "attempts to". The defendant objected to the trial court's failure to give a lesser included instruction. (See WPIC 4.11.) However, the defendant did not propose an instruction setting out the crime, nor did he except to the instruction which defined burglary. These issues were not raised in the petition for review; only the objection to the inference of intent instruction and whether there is evidence of an actual entry are raised before us. The jury found the defendant guilty as charged.

In ruling on the motion for new trial the trial court stated in part:

THE COURT: [C]ounsel reminded me that there was a motion for a new trial brought by the defense in regard to an instruction, . . . which I gave to the jury, in regard

to the inference of intent to commit a crime therein, this being an attempted burglary in the second degree in which the jury found defendant was guilty of the crime of attempted burglary in the second degree.

The trial court denied the motion for new trial, the defendant appealed and we granted a petition for review after the Court of Appeals affirmed his conviction.

I

QUAERE: What Is the Function of an Inference and When Is an Inference Permissible?

"'"Presumptions" . . . "may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." . . .'" Bradley v. S.L. Savidge, Inc. 13 Wn.2d 28, 123 P.2d 780 (1942) (citing Beeman v. Puget Sound Traction, Light & Power Co., 79 Wash. 137, 139, 139 P. 1087 (1914) (quoting Paul v. United Rys. Co., 152 Mo. App. 577, 134 S.W. 3 (1911))).

The basic notions upon which presumptions are grounded are simple. When fact A (the basic fact) is proved at a trial the courts will by rule assume that fact B (the presumed fact) exists for certain purposes and with certain limitations. This specific assumption or inference by application of a general rule is a presumption.

5 K. Tegland, Wash Prac., Evidence § 65, at 127 (2d ed. 1982).

Most presumptions have come into existence primarily because the judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of the fact A until the adversary disproves it.

E. Cleary, McCormick on Evidence § 343, at 969 (3d ed. 1984).

We follow Bradley v. S.L. Savidge, Inc., supra, in quoting the definition of presumption as defined in Heidelbach v. Campbell, 95 Wash. 661, 668, 164 P. 247 (1917):

A presumption is an inference, affirmative or disaffirmative, of the truth of a proposition of fact which is drawn by a process of reasoning from some one or more matters

of known fact. The presumption arises from a want of knowledge of the truth of the proposition. It is in the nature of evidence, and if it be known whether the given proposition is true or false, there can be no presumption because the fact is established which the presumption tends to prove or disprove.

■ Presumptions are one thing; inferences another. Presumptions are assumptions of fact which the law requires to be made from another fact or group of facts; inferences are logical deductions or conclusions from an established fact. Presumptions deal with legal processes, whereas inferences deal with mental processes. *Lappin v. Lucurell,* 13 Wn. App. 277, 284, 534 P.2d 1038, 94 A.L.R.3d 594 (1975). "An inference is simply a logical deduction or conclusion which the law allows, but does not require, following the establishment of the basic facts." 5 K. Tegland, at 127–28.

RCW 9A.52.040 creates an "inference of intent" as applied to burglary and trespass as follows:

In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040 is reflected in WPIC 60.05 to read:

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein [unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent]. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Both RCW 9A.52.040 and WPIC 60.05 permit the inference of one fact from another as a presumption. Burglary consists of two elements; entry or unlawfully remaining

upon another's premises, and intent. RCW 9A.52.030. RCW 9A.52.040 provides that a burglary may be inferred (intent exists) if one either unlawfully remains upon another's premises or an entry occurs. "Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster Cy. v. Allen*, 442 U.S. 140, 156, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). "The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Ulster Cy. Court*, at 157.

WPIC 60.05 provides for a permissive inference or presumption, which allows the trier of fact to either infer the elemental fact from proof by the prosecutor, or reject the inference. WPIC 60.05 does not apply to those attempting to enter or remain unlawfully "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 36, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969). *See also Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

■ For a trier of fact to draw inferences from proven circumstances, the inferences must be "rationally related" to the proven facts. *State v. Jeffries*, 105 Wn.2d 398, 442, 717 P.2d 722, *cert. denied*, 479 U.S. 922 (1986). A rational connection must exist between the initial fact proven and the further fact presumed. "The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference." *Tot v. United States*, 319 U.S. 463, 467, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943).

For a criminal statutory presumption to meet the test of constitutionality the presumed fact must follow beyond a reasonable doubt from the proven fact. *State v. Blight,* 89 Wn.2d 38, 569 P.2d 1129 (1977). *See also State v. Odom,* 83 Wn.2d 541, 520 P.2d 152, *cert. denied,* 419 U.S. 1013 (1974); *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053 (1974).

■ WPIC 60.05 may be given as a proper instruction in a burglary case. However, where the State pleads and proves only attempted burglary, as here, this instruction is improper. In *State v. Bergeron, supra,* the defendant signed a statement wherein he admitted that when he threw a rock through a window he intended to enter the premises. In *Bergeron* we reasoned that while intent may be inferred from all the facts and circumstances surrounding the commission of an act, intent may not be inferred "from conduct that is patently equivocal." In order to give an instruction that an inference of an intent to commit a crime existed in a burglary case, there must be evidence of entering or remaining unlawfully in a building. The instruction on intent cannot be given without evidence to support it and that must place the defendant within a building. *State v. Ogden,* 21 Wn. App. 44, 49, 584 P.2d 957 (1978).

■ A presumption is only permissible when no more than one conclusion can be drawn from any set of circumstances. An inference should not arise where there exist other reasonable conclusions that would follow from the circumstances. Here the inferences are twofold: (1) attempted burglary or (2) vandalism or malicious destruction. Therefore, an inference cannot follow that there was intent to commit a crime *within* the building just by the defendants' shattering of the window in the door. This evidence is consistent with two different interpretations; one indicating attempted burglary, a felony; and the other malicious mischief, a misdemeanor.

## II
### QUAERE: Could the Giving of the Instruction Be Considered Harmless Error?

■ "A 'harmless error' is one which is '"*trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*"'" *State v. Pam,* 98 Wn.2d 748, 754, 659 P.2d 454 (1983) (quoting *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977)). Here, the giving of the instruction could not be harmless error since it tended to prove an element of the commission of a crime. The instruction coming from the trial judge indicated that the defendant had entered the building and did so with the intent to commit a crime against the property therein. We do not need to determine whether the "overwhelming evidence" test would be applicable since we are convinced the inference of intent instruction was not harmless. *See State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

## III
### QUAERE: Is Malicious Mischief a Lesser Included Offense of Attempted Burglary?

■ "Under the Washington rule, a defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed." (Citations omitted.) *State v. Workman,* 90 Wn.2d 443, 447–48, 548 P.2d 382 (1978). Here, the defendant contends that an instruction defining malicious mischief in the third degree should have been given to the jury. RCW 9A.48.090 defines malicious mischief in the third degree as:

(1) A person is guilty of malicious mischief in the third degree if he knowingly and maliciously causes physical damage to the property of another, . . .
(2) Malicious mischief in the third degree is a gross misdemeanor if the damage to the property is in an

amount exceeding fifty dollars; otherwise, it is a misdemeanor.

The defendant is charged with attempted burglary. RCW 9A.52.030 defines burglary in the second degree as:

(1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.

Criminal attempt is defined by RCW 9A.28.020 as:

(1) A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

(2) If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

■ Since the first condition of the test has not been met, we need not go any further in determining whether the second condition applies. Malicious mischief is not a lesser included offense of attempted burglary because one does not invariably cause physical damage while attempting a burglary. One who enters a premises through an unlocked door without permission may be committing burglary, but he has not physically damaged property. The prosecution should have charged the defendant in the alternative; by not doing so the prosecution's choice was to seek a conviction of attempted burglary or nothing.

IV

Quaere: Must the State Specify the Crime
a Defendant Intended To Commit
Upon Entry Into Property?

■ We have held that our burglary statutes simply require an intent to commit a crime against a person or property inside the burglarized premises. As stated in *State v. Bergeron,* 105 Wn.2d 1, 4, 711 P.2d 1000 (1985):

The intent to commit a specific named crime inside the burglarized premises is not an "element" of the crime of burglary in the State of Washington. . . . The intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises.

We adhere to the decision in *Bergeron*. The conviction of attempted second degree burglary is reversed and the cause is remanded for a new trial.

UTTER, DOLLIVER, DORE, PEARSON, and ANDERSEN, JJ., concur.

SMITH, J., concurs in the result.

DURHAM, J. (dissenting)—The majority remands for a new trial after concluding that the trial court committed reversible error by giving the following jury instruction in a prosecution for attempted burglary:

A person who attempts to enter or remain unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

This instruction is derived from a Washington pattern jury instruction, WPIC 60.05, which in turn is based on RCW 9A.52.040.[1] Both WPIC 60.05 and RCW 9A.52.040 allow juries in burglary prosecutions to infer that a defendant intended to commit a crime on the premises when he unlawfully entered or remained in a building. An instruction of this nature is appropriate not only in a burglary case, but also in a prosecution for attempted burglary

---

[1]RCW 9A.52.040 reads as follows:

"In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent."

where the evidence shows that the defendant illegally entered the building. *State v. Bassett,* 50 Wn. App. 23, 26, 746 P.2d 1240 (1987), *review denied,* 110 Wn.2d 1016 (1988). The Legislature has broadly defined an entry in this context to include "the insertion of any part of [a person's] body" into a building. RCW 9A.52.010(2); *see also Bassett,* at 26 (insertion of finger through window constitutes entry); *State v. Couch,* 44 Wn. App. 26, 31–32, 720 P.2d 1387 (1986) (pushing open a trap door constitutes entry). Because the jury reasonably could have found that an entry occurred in the present case—Jackson kicked the Plexiglas window some 10 inches back into the building—the instruction was proper. So reasoned the Court of Appeals in this case, and so should we. *See State v. Jackson,* 51 Wn. App. 100, 102–05, 751 P.2d 1248 (1988).

Instead, the majority engages in an abstract and protracted discussion of the nature of presumptions and inferences. Unfortunately, the court does not discuss the case that addresses presumptions and inferences in the very context at issue here, jury instructions based on RCW 9A.52.040. In *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985),[2] this court explained that there are four fundamental types of presumptions: conclusive presumptions, persuasion–shifting presumptions, production–shifting presumptions, and permissive inferences. Instructions based on RCW 9A.52.040 are analyzed as permissive inferences when the defendant presents evidence in his own case, as occurred here. *Johnson,* at 616–20. Permissive inferences are "constitutionally impermissible only when 'under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.'" *Johnson,* at 616 (quoting *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 157, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979)).

---

[2] In *Bergeron,* we emphasized that the portion of *Johnson* that is relevant to this case is still good law. *See Bergeron,* at 19.

By contrast, the majority concludes that "[a]n inference should not arise where there exist other reasonable conclusions that would follow from the circumstances." Majority, at 876. The majority's conclusion conflicts with the well-accepted notion that juries are not bound to find for the defendant merely because reasonable inferences can be drawn either in favor of guilt or innocence. *See State v. Gosby,* 85 Wn.2d 758, 764–68, 539 P.2d 680 (1975) (rejecting the requirement of a multiple–hypothesis instruction); *State v. Randecker,* 79 Wn.2d 512, 517, 487 P.2d 1295 (1971). The mere existence of contrary reasonable inferences does not necessarily preclude juries from finding guilt. *Randecker,* at 517. The *Johnson* standard recognizes these principles, the majority's does not.

Applying the *Johnson* standard to the present case is not difficult. There is, of course, a rational connection between Jackson's act of kicking in a window and an inference of an intent to commit a crime inside the building. Because the requisite rational connection exists in this case regardless of the existence of other rational inferences, the instruction was properly given to the jury.

The majority concludes not only that the trial court erred in using this instruction, but that the error was prejudicial, requiring a reversal of the conviction below. The majority presents the basis for its holding as follows:

> Here, the giving of the instruction could not be harmless error since it tended to prove an element of the commission of a crime. The instruction coming from the trial judge indicated that the defendant had entered the building and did so with the intent to commit a crime against the property therein. We do not need to determine whether the "overwhelming evidence" test would be applicable since we are convinced the inference of intent instruction was not harmless.

Majority, at 877.

I disagree both with the majority's interpretation of the instruction, and with its application of the law of harmless error. The instruction in no way "indicated" that Jackson intended to commit another crime; it merely informed the

jurors that they were permitted to infer this intent from the evidence presented. As for the test of harmless error, the majority implies that an error relating to presumptions or inferences can never be harmless when it relates to an element of the crime. The case law holds directly to the contrary. *See Rose v. Clark*, 478 U.S. 570, 579–82, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986); *State v. Johnson, supra* at 620–21.

If I were to reach the issue of harmless error, I would adopt the approach taken by the Court of Appeals in this case. The Court of Appeals reasoned that any error in instructing the jury based on RCW 9A.52.040 would be harmless because the jury would have been permitted to make the inference as to Jackson's intent even if the RCW 9A.52.040 instruction were not used. *See Jackson,* at 104 n.3.

Accordingly, I dissent from the majority's holdings in sections I and II of its opinion.[3] I would affirm the Court of Appeals in upholding the conviction below.

BRACHTENBACH, J., concurs with DURHAM, J.

---

[3]Despite my dissent on the first two issues, I concur fully in the analysis of sections III and IV.