[No. 16103-2-I.   Division One.   July 29, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY GRAYSON, *Appellant*.

*Paris K. Kallas* and *Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cindy K. Smith, Deputy,* for respondent.

MUNSON, J.—Gregory Grayson appeals his conviction for second degree burglary, contending there was insufficient evidence he intended to commit a theft upon unlawfully entering the residence of John Beanblossom. We affirm.

At about 8:15 a.m. on January 12, 1984, Mr. Beanblossom returned home after working the graveyard shift as a communications specialist for the King County Police Department. He normally parks his car on the street in front of his house; this particular day his car was being repaired. At approximately 10 a.m. there was a knock on his door. He went to the front door and saw through the window a young man wearing a multicolored ski cap. He opened the door; the man appeared startled and asked where the Williams or Williamsons lived. Mr. Beanblossom told him he did not know; the man said "that's too bad," thanked Mr. Beanblossom and walked away. In addition to the ski cap, he was wearing a dark brown, waist length jacket, and had a pair of dark brown leather mittens hanging around his shoulders on a piece of string. At approximately 11 a.m., Mr. Beanblossom went to bed.

Sometime later, he was awakened by several crashing sounds. He got up, put on his pants and glasses, walked toward the kitchen, and saw the same man who had

knocked on his door that morning, wearing the same cap and brown jacket, standing in his kitchen. The man was looking toward the window, which faced the street. Mr. Beanblossom yelled "hey." The man turned, faced Mr. Beanblossom, then ran out the kitchen door. Mr. Beanblossom looked at the clock, saw it was 12:55 p.m., then called the police. His kitchen door appeared to have been forced or kicked in; the doorjamb was hanging off the wall, the locking mechanism was broken off, and pieces of plaster were scattered on the floor. He subsequently identified Mr. Grayson as the man in his house on January 12, 1984. A jury found Mr. Grayson guilty of second degree burglary, finding he entered the house "with intent to commit a crime against a person or property therein, to–wit: theft."[1] He appeals.

██ The sole issue is whether there was sufficient evidence to support a finding that Mr. Grayson had entered the house with the intent to commit a theft therein. The test is whether, after reviewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *State v. Hughes,* 106 Wn.2d 176, 199, 721 P.2d 902 (1986).

Mr. Grayson correctly asserts a presumption may only be used to establish an element of a criminal offense when the presumed fact, beyond a reasonable doubt, follows the proven fact. *State v. Bishop,* 90 Wn.2d 185, 188, 580 P.2d 259 (1978). He also correctly argues that although theft is "the most usual motive for burglary," *State v. Johnson,* 100 Wn.2d 607, 625, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985), as a matter of law it does not follow beyond a reasonable doubt from the fact of unlawful entry. Thus he concludes, the State has not proved every element of the

---

[1]Mr. Grayson was charged in accordance with *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983) with intent to commit a specific crime "to–wit: theft" and tried before *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985).

crime charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

■■ Mr. Grayson does not assign error to any of the jury instructions. Furthermore, none of the instructions *required* the jury to infer or presume any fact. The pertinent instructions merely provide the State must prove beyond a reasonable doubt Mr. Grayson "entered or remained unlawfully in a building . . . with intent to commit a crime against a person or property therein, to–wit: theft . . ." Thus, the jury's finding he entered the house with the intent to commit a theft is properly characterized as a permissive inference. *Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985); *County Court v. Allen,* 442 U.S. 140, 157, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979); *Johnson,* at 615; *State v. Savage,* 94 Wn.2d 569, 573–74, 618 P.2d 82 (1980); 5 K. Tegland, Wash. Prac., *Evidence* § 65, at 127–28 (2d ed. 1982).

Permissive inferences are constitutionally impermissible only when "'under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.'" *Johnson,* at 616 (quoting *Allen,* 442 U.S. at 157). *See also Francis,* 105 S. Ct. at 1971; *Turner v. United States,* 396 U.S. 398, 405, 24 L. Ed. 2d 610, 90 S. Ct. 642 (1970); *Leary v. United States,* 395 U.S. 6, 33, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); E. Cleary, *McCormick on Evidence* § 347, at 997 (3d ed. 1984).

As the court pointed out in *Bergeron,* at 19–20:[2]

> Intent may be inferred from all the facts and circumstances surrounding the commission of an act or acts. *State v. Lewis,* 69 Wn.2d 120, 123, 417 P.2d 618 (1966), citing *State v. Willis,* 67 Wn.2d 681, 685, 409 P.2d 669 (1966). This rule is applicable in cases of attempted crimes as well as in cases where the crime has been consummated. *State v. Lewis, supra,* at 123,

---

[2]*Bergeron* partially overruled *Johnson* holding that "specific . . . crimes intended to be committed inside burglarized premises is *not* an element of burglary that must be included in the information, jury instructions or in the trial court's findings and conclusions." *Bergeron,* at 16.

citing *State v. Leach,* 36 Wn.2d 641, 646, 219 P.2d 972 (1950). Although intent may not be inferred from conduct that is patently equivocal, it may be inferred from conduct that plainly indicates such intent as a matter of logical probability. *State v. Lewis, supra* at 124.

Mr. Bergeron's conduct was not patently equivocal; it plainly indicated his criminal intent as a matter of logical probability. [*State v. Bergeron,* 38 Wn. App. 416, 419, 685 P.2d 648 (1984).]

Even *Johnson,* at 625, noted that "[a]bsent any such evidence [probative of defendant's intent to steal], the State is justified in alleging, and the jury justified in inferring, an intent to commit theft, that being the most usual motive for burglary." *See also State v. Couch,* 44 Wn. App. 26, 32, 720 P.2d 1387 (1986).

There was sufficient evidence for the jury to rationally infer Mr. Grayson entered the house with the intent to commit a theft therein, given he: (1) knocked on Mr. Beanblossom's door on the morning of the crime, (2) was aware the house was occupied by a person he did not know, (3) forced open the kitchen door, and (4) fled immediately upon being discovered. *See Johnson,* at 620, 625; *Couch,* at 32. This holding would not, as Mr. Grayson asserts, transform every unlawful entry into second degree burglary; his actions were not "patently ambiguous" under these facts.

The conviction is affirmed.

WEBSTER and PEKELIS, JJ., concur.

Review denied by Supreme Court November 3, 1987.