# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73618-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ERIC MICHAEL SHARPE, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 10, 2016 |

TRICKEY, J. — Eric Sharpe appeals his conviction for residential burglary. He argues there was insufficient evidence that he intended to commit a crime while inside the residence. Because there was evidence from which a reasonable jury could believe beyond a reasonable doubt that Sharpe intended to commit a crime against the property within the house, we affirm.

## FACTS

Leo Lund lived in a house in Renton, Washington from 1960 until he passed away in 2011. After Lund's death, his daughter Bonnie Heaven, along with her sisters, worked on clearing out the house. The house was fairly clean by May 2013.

Heaven checked on the property every few weeks, including on May 25, 2013. She locked the doors and windows when she left. At the house there was a pickup truck that worked but was difficult to start. The key to the truck was kept in Lund's house.

On the afternoon of May 31, 2013, Kathleen Ness, Lund's neighbor, heard someone trying to start the pickup truck. She also saw a man in Lund's yard, "rummaging through things" on a table.[1] Ness called the police.

Deputy D.J. Murphy and Deputy Stephen Boggess of the King County Sheriff's Office responded to the scene a few minutes later. The two deputies walked around the house, noting that everything appeared intact. Once inside the house, they noticed an open window with a recently cut screen in the bedroom. They had not seen any cut screens when they walked around the house earlier. There was a path leading from the window into the woods.

Believing that someone had fled out the window and into the woods, the officers called for assistance. Deputy Murphy and a K-9 officer from the Renton Police Department followed the path into the woods. They found Eric Sharpe about 200 feet from the house. Sharpe was wearing gloves and carrying glass cutters; he also had a ring of filed keys, which Deputy Boggess recognized as the kind often used in automobile theft. He had pruning shears next to him. Ness later identified Sharpe as the man she had seen in the yard.

Heaven returned to the house about a week after the break-in. She found a suitcase partially filled with items from the house in a bedroom with the cut screen. She had not left the suitcase there or moved the items into that room.

The State charged Sharpe with one count of residential burglary. He was convicted after a jury trial. Sharpe appeals.

---

[1] Report of Proceedings (Apr. 8, 2015) at 38-39.

ANALYSIS

Sufficiency of the Evidence

Sharpe challenges the sufficiency of evidence supporting his conviction for residential burglary. Because a rational trier of fact could have believed that Sharpe intended to commit a crime within Lund's house, we reject his challenge.

The State must prove all elements of a charged crime beyond a reasonable doubt. State v. Larson, 184 Wn.2d 843, 854, 365 P.3d 740 (2015). When a criminal defendant challenges the sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We accept as true all the State's evidence and any inferences that the jury could reasonably have drawn from it. Salinas, 119 Wn.2d at 201.

The jury convicted Sharpe of residential burglary. A person commits residential burglary if the person "enters or remains unlawfully in a dwelling" with the "intent to commit a crime against a person or property therein." RCW 9A.52.025(1). The jury may infer intent "from all of the facts and circumstances surrounding the act." State v. Lewis, 69 Wn.2d 120, 123, 417 P.2d 618 (1966). "'Although intent may not be inferred from conduct that is patently equivocal, it may be inferred from conduct that plainly indicates such intent as a matter of logical probability.'" State v. Bergeron, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985) (quoting State v. Bergeron, 38 Wn. App. 416, 419, 685 P.2d 648 (1984)).

Here, the totality of the evidence supports a finding that Sharpe intended to commit a crime against the property within the house. During their initial inspection of the outside of the house, the deputies did not see any cut screens on the windows. Upon entering the house, the deputies found a cut window screen and a path from that window into the woods. Using a police dog to follow that path, they located Sharpe. A reasonable jury could infer from these facts that Sharpe fled the house from the room with the cut screen once the officers entered it.

Heaven found a suitcase with items from the house, which she and her sisters had not packed, in the room that Sharpe may have fled from. Sharpe had tools commonly used for burglaries with him when the police discovered him. Given this circumstantial evidence, a reasonable jury could have inferred that, as a matter of logical probability, Sharpe intended to steal property from Lund's house.

Similarly, a reasonable jury could have inferred that Sharpe intended to steal the keys to the pickup truck from the house. On the afternoon Sharpe was arrested, Ness heard someone trying to start the pickup truck on the property. The key to the pickup truck was kept in Lund's house. A reasonable jury could have inferred that, using the key taken from the house or his filed keys, Sharpe tried to steal the truck but was unable to start it. Accordingly, the jury could have found beyond a reasonable doubt that Sharpe entered Lund's house with the intent to commit a crime against the property therein.

4

We affirm the judgment and sentence.

_Trickey, J_

WE CONCUR:

_____          _Leach, J._